## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**Judy M. Burns Willbanks**                                                                 **Plaintiff**

**v.**                                    **No. 3:14CV00017 JLH/JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                **Defendant**

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge J. Leon Holmes.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Holmes may adopt the recommended disposition without independently reviewing all of the record evidence.

------

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Judy M. Burns Willbanks seeks judicial review of the denial of her application for disability benefits.[3]  Willbanks last worked in March 2011 as a customer service clerk for StarTek.[4]  She says she stopped working because she had a stroke,[5] but her treatment records reflect no stroke.  Willbanks bases disability on a stroke, coronary artery disease, mitral valve prolapse, mental disorder, panic attacks, chronic obstructive pulmonary disease, fatigue, and memory loss.[6]

**The Commissioner's decision**.   After considering the application, the Commissioner's ALJ determined Willbanks has severe impairments — hypertension, status post coronary artery bypass graft, disc bulges in the cervical and lumbar spines, depressive disorder, anxiety disorder, and pain disorder associated with medical and psychological factors[7] — but she can do some sedentary work,[8] to include her past

_____

[3]SSA record at pp. 148 & 152 (alleging disability beginning Mar. 14, 2011)

[4]*Id*. at pp. 94, 182 & 204.

[5]*Id*. at pp. 52-54 & 364.

[6]*Id*. at pp. 95 & 202.

[7]*Id*. at p. 15.

[8]*Id*. at p. 17 (limiting sedentary work by requiring (1) occasional bending, stooping, kneeling, crouching, or crawling, and (2) ambulation on level surfaces).

work as a customer service clerk, receptionist, and data entry clerk.[9]  Because a person

who can do her past work isn't disabled under social security law,[10] the ALJ denied

the application.[11]

        After the Appeals Council declined to review,[12] the ALJ's decision became the

Commissioner's final decision for the purpose of judicial review.[13]  Willbanks filed

this case to challenge the decision.[14]   In reviewing the decision, the court must

determine whether substantial evidence supports the decision and whether the ALJ

made a legal error.[15]   This recommendation explains why substantial evidence

---

[9]*Id.* at p. 27.

[10]20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[11]SSA record at p. 27.

[12]*Id.* at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

supports the decision and why the ALJ made no legal error.

**Willbanks's allegations**.  Willbanks challenges the ALJ's determination about her ability to work.  She says the ALJ did not properly consider Dr. Hollis's medical opinion.  She contends Dr. Hollis's opinion deserved substantial weight because Dr. Hollis was the only physician who examined her.  She maintains the opinion is supported by the doctor's observations, treatment records, and social security documents.  For this reason, she maintains substantial evidence does not support the ALJ's decision.[16]

**Applicable legal principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Willbanks can do sedentary work, to include her past work.[17]  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[18] Sedentary work "represents a significantly restricted range of work.  Individuals who are limited to no more than sedentary work by their medical

---

[16]Docket entry # 12.

[17]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[18]20 C.F.R. §§ 404.1567(a) & 416.967(a).

impairments have very serious functional limitations."[19]  The court must determine whether Willbanks has serious functional limitations preventing her from doing her past work.

**The medical evidence shows no very serious functional limitation preventing sedentary work**.  When asked why she can't work, Willbanks testified that she can't work because she can't concentrate, she gets angry and emotional, she has excruciating neck pain, and back pain prevents her from sitting.  She said, that after her stroke, she was too nervous and anxious to return to work.[20]  These allegations are not enough to prove Willbanks is disabled.  A determination about a claimant's ability to work must be supported by medical evidence.[21]  The medical evidence shows nothing preventing sedentary work.

**A two-night hospitalization triggered Willbanks's application, but treatment records reflect no disabling impairment**. On March 15, 2011, Willbanks presented to the emergency room and complained about chest pain, shortness of

---

[19]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[20]SSA record at pp. 39-40, 46 & 54.

[21]42 U.S.C. § 423 (d)(5)(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. § 404.1508.

breath, dizziness, and headache.[22]  Her blood pressure was elevated.  She reported a

history of coronary artery disease and mitral valve prolapse.[23]  She was admitted for

observation and testing.[24]

Diagnostic testing showed elevated cholesterol[25] and 50 to 69% plaque in the

left internal carotid artery,[26] but placed Willbanks at a low risk for a cardiac event;[27]

that is, she had a low risk for a heart attack, angina, acute coronary syndrome, or

coronary artery bypass graft surgery.  The final diagnosis was non-cardiac chest pain,

left internal carotid artery stenosis, high cholesterol, high blood pressure, and tobacco

abuse.[28]  There was no diagnosis of a stroke.

The hospitalization is particularly probative of Willbanks's claim because that

event triggered the claim.  Associated treatment records weigh against the claim for

the following reasons: (1) Willbanks based her application, in significant part, on a

stroke, but treatment records do not support a stroke.  (2) The treating physician

---

[22]SSA record at pp. 319 & 325.

[23]*Id*. at p. 325.

[24]*Id*. at p. 322 (admit for observation).

[25]*Id*. at p. 323.

[26]*Id*. at pp. 323 & 337.

[27]*Id*. at p. 346.

[28]*Id*. at p. 323.

instructed Willbanks to stop smoking,[29] but Willbanks continued to smoke throughout the pendency of her application.  Willbanks's failure to comply with medical advice weighs against her claim because Willbanks attributed many symptoms to a stroke and her heart, and because smoking is a major risk factor for stroke and heart disease.

**Subsequent treatment records reflect no disabling impairment**.  After the two-night hospitalization, Willbanks established care with a primary care physician (PCP).[30]  That care provided the only other source of medical evidence.[31]  Willbanks complained about depression and anxiety,[32] but she did not take the prescribed anti-depressant and anti-anxiety medication.  She complained about neck and back pain, but rejected the results of diagnostic imaging showing mild degenerative changes.[33] She wanted narcotic pain medication.[34]

---

[29]*Id.*

[30]*Id.* at p. 356.

[31]The record includes a few treatment records for common ailments, but those records precede the alleged onset date, as well as the time period for which benefits were denied.  *See id.* at p. 303(office visit for medication refills on Apr. 20, 2010); p. 294 (emergency room visit on May 28, 2010 foe insect bite); p. 287 (emergency room on June 21, 2010 visit for allergic reaction); p. 276 (office visit for bronchitis on Feb. 8, 2011).

[32]*Id.* at p. 356.

[33]*Id.* at p. 415.

[34]*Id.*

**The diagnostic imaging shows no reason for disabling pain**.  Imaging of the neck showed a disc bulge and bone spurs at level C5/6 causing mild neuroforminal stenosis and mild left neural foramina stenosis; and a mild disc bulge at C6/7 without significant canal or neuroforminal stenosis.[35]  Imaging of the back showed a slight disc bulge at level L4/5, a small disc bulge at L5/S1, and no severe stenosis.[36]  The use of the modifiers "mild," "slight," and "small" suggests no reason for disabling pain.

**Prescribed treatment does not support disabling pain**.  The PCP prescribed a non-steroidal anti-inflammatory drug,[37] and counseled Willbanks to exercise and to stop smoking,[38] but Willbanks did not comply.  Considering the role of regular exercise in managing chronic pain,[39] and the association between smoking and chronic pain,[40] failing to follow treatment recommendations weighs against the claim.  Under

---

[35]*Id*. at p. 424.

[36]*Id*. at p. 434.

[37]*Id*. at p. 413.

[38]*Id*. at pp. 413 & 415.  *See also id*. at p. 357.

[39] Joan M. Schonbeck, Sam Uretsky, Rebecca Frey & Brenda W. Lerner, 5 The Gale Encyclopedia of Med. 3243 (4th ed.) (discussing benefits of exercise in managing pain).

[40]Toby N. Weingarten, Yu Shi, Carlos B. Mantilla, W. Michael Hooten & David O. Warner, *Smoking and Chronic Pain: A Real-but-Puzzling Relationship*, Minn. Med., Mar. 2011 (discussing evidence indicating smokers are more likely than nonsmokers to experience chronic pain).

the regulations, a claimant who fails to treat a remediable condition without good reason is barred from receiving disability benefits.[41]  Willbanks relies on the lack of medical insurance for not seeking treatment, but the prescribed treatment requires no medical insurance.  Willbank's non-compliance suggests she over-stated her pain.[42]

**Willbanks complained about mental symptoms, but those symptoms can be controlled with treatment**.  "An impairment which can be controlled by treatment or medication is not considered disabling."[43]  A PCP nurse prescribed an anti-depressant and an anti-anxiety medication,[44] but Willbanks did not take the medication.[45]  The psychological examiner characterized Willbanks as appearing to be very depressed and anxious.[46]  The examiner diagnosed depressive disorder,

---

[41]*Tome v. Schweiker*, 724 F.2d 711, 713-14 (8th Cir. 1984).  *See* 20 C.F.R. §§ 404.1530 & 20 C.F.R. 416.930 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

[42]*Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."); *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding claimant's allegation that he could not afford prescribed medication inconsistent the lack of evidence suggesting the claimant sought treatment offered to indigents or gave up smoking to help finance pain medication).

[43]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[44]SSA record at p. 357.

[45]*Id*. at pp. 41 & 363.

[46]*Id*. at p. 364.

anxiety disorder, pain disorder[47] associated with medical and psychological factors,[48] but described Willbanks's symptoms as "very treatable" if Willbanks would comply with treatment.[49]   According to the examiner, Willbanks was unlikely to be able to cope with typical mental demands of basic work-like tasks until she gets treatment,[50] but she has the capacity to sustain persistence and complete work-like tasks.[51]   The examiner reported that a lack of trust in medical professionals kept her from seeking needed treatment.[52]   The failure to seek treatment weighs against Willbanks's claim.

**The agency medical opinion evidence indicates Willbanks can do her past work**.   After reviewing the treatment records, agency medical experts opined that Willbanks can do light work.[53]   Agency mental health experts reported moderate limitations in maintaining concentration for extended periods of time, responding to

---

[47]"Pain disorder is classified as a mental disorder because psychological factors play an important role in the onset, severity, worsening, or maintenance of pain." Tanja Bekhuis & Emily Jane Willingham, 2 The Gale Encyclopedia of Mental Health 1101 (3d. ed.).

[48]SSA record at p. 367.

[49]*Id*. at p. 368.

[50]*Id*. at p. 368.

[51]*Id*. at p. 369.

[52]*Id*. at p. 367.

[53]*Id*. at pp. 376 & 411.

changes in the work setting, and setting realistic goals independently of others.[54] The only evidence controverting evidence is Dr. Hollis's letter.

**The ALJ properly rejected Dr. Hollis's letter**. "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole."[55] Dr. Hollis reported limitations that, if true, preclude all work.[56] By doing so, the opinion created a conflict in the medical opinion evidence; the ALJ had to resolve conflict before determining Willbanks's ability to work.

Willbanks suggests the reported limitations are supported because Dr. Hollis examined her, but the letter does not support that characterization. Rather than stating that he examined Willbanks, Dr. Hollis stated that he based his opinion, in part, on his "personal observations during an evaluation." Dr. Hollis provided no personal medical findings. Instead, he reviewed treatment records for the two-night hospitalization, the diagnostic imaging, and the mental status evaluation. Had Dr. Hollis examined Willbanks, it is reasonable to expect him to provide medical findings.

Willbanks suggests the ALJ mis-characterized her back problems, but it's more

---

[54]*Id*. at pp. 383-84 & 412.

[55]*Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

[56]*Id*. at p. 441.

11

likely Dr. Hollis mis-characterized the back problems.  Dr. Hollis reported disabling

limitations in standing, sitting, and lifting, ostensibly because of a "disc bulge with

effacement of the thecal sac and nerve root."[57]  The only basis for reporting such

limitations is a typographical error in the radiologist's report.

The radiologist's report reads "a small central disc bulge but severe effacement

of the thecal sac or nerve roots,"[58] but it should have read "a small central disc bulge

but *without* severe effacement of the thecal sac or nerve roots."  The radiologist's

"impression" shows the omission of the word "without" was a typographical error,

because it concludes, "Disc bulging without severe stenosis."[59] By reporting that there

was no severe stenosis,[60] the radiologist indicated that there was no severe effacement

of the thecal sac or nerve roots; that is, nothing to explain the alleged severity of pain.

Dr. Hollis also reported disabling limitations in over-head reaching and moving

the head, ostensibly because of bulging and stenosis in the cervical spine, but the

degree of bulging and stenosis — mild — does support the reported limitations.

---

[57]SSA record at p. 441.

[58]*Id*. at p. 434.

[59]*Id*.

[60]Stenosis refers to the narrowing and compression of the spinal cord and nerve roots.  If bulging material contacts or effaces the thecal sac or nerve roots, it could cause narrowing of the spinal canal.

12

There is simply no way to reconcile the reported limitations with the medical evidence.  The ALJ properly rejected the letter as unsupported.  The medical evidence shows Willbanks did not have a stroke, she has a low risk for a cardiac event — with the except of smoking and not exercising, she has treatable mental symptoms, and diagnostic imaging shows no cause for disabling neck or back pain.

**Willbanks has the capacity to do her former work**.  The vocational expert classified three of Willbanks's past jobs as semi-skilled, sedentary work: information clerk, receptionist, and data entry clerk.[61]  A reasonable mind would accept the evidence as adequate to show Willbanks can do her past work because the ALJ required sedentary work.  Nothing shows Willbanks cannot do her past jobs.  A person who can do her past work is not disabled under social security law.

---

[61]*Id*. at pp. 71-73.

## Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to support the decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Willbanks's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 14th day of November 2014.


_____
United States Magistrate Judge